**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

BETTY A. EVANS,

                      Plaintiff,

v.                                             CIVIL ACTION NO. 2:10-cv-00945

TRANS UNION LLC, et al.

                      Defendants.

**MEMORANDUM OPINION AND ORDER**

      Before the Court is Defendant Charleston Area Medical Center's (CAMC) motion to dismiss Count Three of the amended complaint [Docket 26]. For the reasons set forth below, the motion is **DENIED**. In addition, CAMC's motion to dismiss Count Three of the original complaint [Docket 6] is **DENIED AS MOOT**.

                            *I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

      According to her amended complaint, Plaintiff Betty A. Evans (Plaintiff) first learned of her negative credit report when she was denied a mortgage loan by United Bank on August 26, 2008. (Docket 18 at 2.) The credit report on which United Bank based its decision was allegedly furnished by TransUnion, LLC (TransUnion). That same day, Plaintiff obtained a copy of her credit report from TransUnion. According to Plaintiff, the TransUnion report reflected a collection account from CAMC with a balance of approximately $22,193 from April 2007 and a state tax lien for $310 from October 1998. (Docket 18 at 3.) On September 24, 2008, Plaintiff contacted TransUnion regarding the credit report. In her amended complaint, Plaintiff claims to have informed TransUnion that the

$22,193 collection amount was incorrect, explaining that her medical insurance provider had paid in full the medical bill from which that debt arose.

After attempting to settle a number of other debts reflected in her TransUnion credit report, Plaintiff applied for a savings account with Chase Bank in November 2009. Plaintiff's application was denied on November 12, 2009, according to her amended complaint, "due to information received from Trans Union[.]" (Docket 18 at 4.) Plaintiff further states that an investigation into the $22,193 debt conducted by the West Virginia Attorney General's Consumer Protection and Antitrust Division revealed that the debt arose from medical services provided to Plaintiff by CAMC on January 12, 2007. This debt was settled by Plaintiff's insurer, less a $44 co-payment, according to a letter dated November 30, 2009. (*Id.*) As of December 1, 2009, Plaintiff's TransUnion credit report reflected a collection account with an "Original Amount" of $22,193, a "Balance" of $44, and a "Past Due" amount of $44. (Docket 24 at 2.) Finally, Plaintiff states that CAMC agreed to remove the $22,193 debt from Plaintiff's credit file, per a letter dated February 8, 2010. (Docket 18 at 5.)

On June 22, 2010, Plaintiff filed a complaint against TransUnion and CAMC in the Circuit Court of Kanawha County, West Virginia. The complaint alleges that TransUnion violated multiple provisions of the Federal Credit Reporting Act (FCRA) and that CAMC was negligent in recording and reporting payment on Plaintiff's medical bills. On July 22, 2010, defendants jointly removed the case to this Court, asserting federal question jurisdiction over Plaintiff's claims against TransUnion and supplemental jurisdiction over Plaintiff's common law claim against CAMC. (Docket 1 at 2.) CAMC moved to dismiss the count against it on July 28, 2010, arguing that the FCRA preempts the negligence claim in Count Three. (Docket 6.) In accordance with the Court's Scheduling Order (Docket 15), Plaintiff filed her amended complaint on October 6, 2010. (Docket

2

18.) Plaintiff's negligence claim against CAMC remained unchanged. On October 20, 2010, CAMC moved to dismiss Count Three of the amended complaint for the same reason. (Docket 26.)

## II. LEGAL STANDARD

Defendant's motion to dismiss must be evaluated under the pleading standard set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Rule 8(a)(2) requires only that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which its rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

*Twombly* states that a well-pleaded complaint must aver "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A "plausible" claim cannot be supported by mere "labels and conclusions." *Id.* at 555. Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and critical elements of a claim must be, at a minimum, "suggested by the facts," *id.* at 569. This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). In testing the sufficiency of the complaint, the Court must "accept[ ] all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable inferences from those facts in the plaintiff's favor." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (all factual allegations in pleadings assumed to be true). A district court may grant a motion to dismiss based on federal preemption if the defense easily can "be determined from the pleadings." *Cf. Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 66 (2d Cir. 2006) (denying

motion to dismiss when "preemption cannot be easily determined from the pleading"); *accord Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 832 (4th Cir. 2010) (affirming dismissal under 12(b)(6) because state law claims were preempted by FEMA).

## III. DISCUSSION

CAMC's only contention in its motion to dismiss[1] is that Count Three of Plaintiff's complaint, which alleges common law negligence by Defendant CAMC, is preempted by the FCRA and therefore fails to state a claim upon which relief can be granted. According to CAMC, 15 U.S.C. § 1681h(e) precludes the common law negligence claim against CAMC because Plaintiff has failed to allege that CAMC acted with malice or willful intent to injure Plaintiff.

### A. *The Fair Credit Reporting Act*

The FCRA is a comprehensive statutory scheme designed to regulate and promote fairness in the consumer reporting industry. 15 U.S.C. § 1681(a); *Ross v. FDIC*, 625 F.3d 808, 812 (4th Cir. 2010). Recognizing the importance of impartiality and protecting the privacy rights of consumers regarding personal credit information, Congress devised a "comprehensive series of restrictions on the disclosure and use of credit information assembled by consumer credit reporting agencies." *FTC v. Manager, Retail Credit Co.*, 515 F.2d 988, 989 (D.C. Cir. 1975). "The FCRA 'has been drawn with extreme care, reflecting the tug of the competing interests [between consumers and creditors],' and courts must respect the balance struck by Congress when interpreting its provisions." *Ross*, 625 F.3d at 812 (quoting *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)).

---

[1] References to CAMC's motion to dismiss are to its motion to dismiss the amended complaint.

4

The FCRA imposes various obligations on three types of entities: consumer reporting agencies (CRAs), users of consumer credit reports, and entities that furnish debt information to CRAs, or "furnishers." *See* 15 U.S.C. §§ 1681-1681x; *Wenner v. Bank of America, N.A.*, 637 F. Supp. 2d 944, 951 (D. Kan. 2009). Defendant CAMC is a furnisher of credit information, and Defendant TransUnion is a CRA. *See* 15 U.S.C. § 1681a(f) (definition of CRA); *Ross*, 625 F.3d at 813 (describing the duties of "those who report credit information to CRAs"); 12 C.F.R. § 41.41(c) ("Furnisher means an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report."). With regard to the duties of furnishers, the FCRA generally requires that furnishers report only accurate information to CRAs, and it imposes a further duty on furnishers to verify the sufficiency and accuracy of reported information once they are notified of a possible error by a CRA or consumer. *See generally* 15 U.S.C. § 1681s-2. Importantly, however, the FCRA does not impose upon furnishers a duty to report credit information at all; instead, the FCRA dictates how and under what circumstances information may be reported, if a furnisher so chooses. *Cf.* 12 C.F.R. pt. 41, app. E ("The OCC encourages voluntary furnishing of information to consumer reporting agencies. Section 41.42 of this part requires each furnisher to establish and implement reasonable written policies and procedures concerning the accuracy and integrity of the information it furnishes to consumer reporting agencies."); *see also* 15 U.S.C. § 1681s-2(a)(1)(A) (framing the duty as a prohibition on reporting information known to be inaccurate, rather than an affirmative duty to report any information).

*B. Preemption of State Law Causes of Action Pursuant to the FCRA*

As originally enacted, the FCRA permitted state regulation of the consumer reporting industry. The original preemption provision, 15 U.S.C. § 1681t(a), preempts state laws only "to the extent that those laws are inconsistent with any provision of [the FCRA]." In 1996, Congress amended the FCRA with the Consumer Credit Reporting Reform Act of 1996 ("CCRRA"). *See generally* Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, 3009-426. The CCRRA added a stronger preemption provision, 15 U.S.C. § 1681t(b), which provides in pertinent part:

> No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

15 U.S.C. § 1681t(b)(1)(F). By its very language, this subsection preempts state laws concerning any matter covered in 15 U.S.C. § 1681s-2. Section 1681s-2(a), in turn, prohibits furnishers from providing information known or believed to be inaccurate, and it includes the duty to correct any errors in reporting and update the information furnished to CRAs. 15 U.S.C. §§ 1681s-2(a)(1), (2). Section 1681s-2(b) outlines the further duty of information furnishers to conduct an investigation into the completeness or accuracy of any information they provide to CRAs, but only once they receive notice of a dispute or inaccuracy. 15 U.S.C. § 1681s-2(b)(1). Thus, 15 U.S.C. § 1681s-2 expressly preempts, at least to some degree, certain causes of action related to those duties the FCRA imposes on information furnishers.

Although this provision seems straight-forward on its own, courts have struggled to reconcile § 1681t(b)(1)(F) with another preemption provision in the FCRA, section 1681h(e). Section 1681h(e), which was also amended in 1996, provides:

> Except as provided in sections 1681n and 1681*o* of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). These two preemption provisions are in apparent conflict: while § 1681t(b)(1)(F) *seems* to preempt all state laws regarding the liability of information furnishers, section 1681h(e) preempts only certain types of common law actions against information furnishers, and then only under certain circumstances. Although the Fourth Circuit has not squarely resolved this apparent conflict,[2] district courts in this circuit and other courts of appeals have developed three distinct solutions. The Court's resolution of the conflict will determine which, if either, of the FCRA's preemption provisions apply to Plaintiff's common law negligence claim.

    *C.      Reconciling 15 U.S.C. § 1681t(b)(1)(F) and 15 U.S.C. § 1681h(e)*

          *1.      First Approach: 15 U.S.C. § 1681t(b)(1)(F) Preempts all State Laws Which Affect the Duties of Information Furnishers*

Courts adopting the "total preemption approach" have concluded that the amendment and expansion of 15 U.S.C. § 1681t(b) effectively superseded 15 U.S.C. § 1681h(e). *See, e.g.*, *Hasvold*

---

[2] The Fourth Circuit did acknowledge the conflict in *Ross*, however:

> If Ross could meet the steps of the § 1681h(e) analysis, we would next have to confront the alleged conflict between § 1681h(e) and § 1681t(b)(1)(F). Courts have taken a variety of approaches to resolving this conflict. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1165-67 (9th Cir. 2009) (reviewing the case law regarding the possible conflict between § 1681h(e) and § 1681t(b)(1)(F)). Our disposition of this case means we need not address this issue.

625 F.3d at 814 n.*.

*v. First USA Bank*, 194 F. Supp. 2d 1228, 1238-39 (D. Wyo. 2002). As such, 15 U.S.C. § 1681t(b) "preempts all state laws which affect the duties of furnishers of information to consumer reporting agencies." *Barnhill v. Bank of America, N.A.*, 378 F. Supp. 2d 696, 800 (D.S.C. 2005) (describing but not adopting this approach). The total preemption approach, however, fails to acknowledge that when Congress amended § 1681t(b) in 1996 to add more expansive preemption provisions, it amended § 1681h(e) to encompass more conduct as well. *See* Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104-208, § 2408, 110 Stat. 3009, 3009-439. In addition, the total preemption approach "ignores well-established principles of statutory construction" by unnecessarily rendering § 1681h(e) superfluous. *Barnhill*, 378 F. Supp. 2d at 700-01. If Congress intended § 1681h(e) to become a nullity, it would have eliminated that provision with its 1996 amendments. To date, no federal court in the Fourth Circuit has employed this construction, and the Court declines to do so for the reasons stated above.

> 2. *Second Approach: 15 U.S.C. § 1681t(b)(1)(F) Preempts State Laws Which Affect the Duties of Information Furnishers <u>After</u> Notice of a Dispute or Innacuracy; 15 U.S.C. § 1681h(e) Preempts Causes of Action Predicated on Acts Occurring <u>Before</u> Such Notice*

"The temporal approach reconciles §§ 1681t(b) and 1681h(e) by focusing on *when the furnisher of information received notice* that the information provided was inaccurate or disputed." *Barnhill*, 378 F. Supp. 2d at 701 (emphasis added). Under the temporal approach, "once a furnisher of information has notice from any source and provides inaccurate information, the conduct is subject matter regulated under section 1681s-2," *Kane v. Guaranty Residential Lending, Inc.*, No. 04-4847, 2005 WL 1153623, at *8 (E.D.N.Y. May 16, 2005), and is therefore completely preempted by § 1681t(b) of the FCRA. If, however, a furnisher of information is sued for an act that occurred *before* the furnisher had notice of any inaccuracies in their reporting, the appropriate preemption

8

statute is § 1681h(e), pursuant to which "common law tort claims may go forward only if . . . malice or willful intent to injure the consumer has been alleged." *Barnhill*, 378 F. Supp. 2d at 701.

This approach has been criticized on at least three grounds. First, it allows a more general limiting statute, § 1681t(b)(1)(F), to control a more specific statute, § 1681h(e):

> Section 1681t(b) is a general preemption provision, both by its terms and its given moniker, which is "General exceptions." Numerous courts have construed § 1681t to be a general statute, and § 1681h(e), preempting only common law tort claims and excepting only claims alleging malice and willfulness, to be a specific statute that is not controlled by § 1681t.

*Barnhill*, 378 F. Supp. 2d at 702 (internal citations and quotations omitted). However, some courts subject § 1681h(e) to the strictures of § 1681t(b) by construing § 1681t(b)(1)(F) to bar *all* common law tort claims for actions arising after furnishers receive notice of an alleged inaccuracy in their reporting. Such total preemption contravenes the plain language of the more specific provisions in § 1681h(e), which allow common law claims to proceed (provided willful intent or malice is shown) without regard to notice of inaccurate reporting.

A second criticism is that the temporal approach leads to a curious result, namely, liability insulation for a furnisher of information who has knowledge of the inaccurate reporting, even if they act willfully or with malicious intent to injure the consumer. Such a result is again in direct contravention of § 1681h(e), and permitting information furnishers to escape common law liability on the basis of knowledge alone is somewhat illogical. The argument is compounded when considered in context: "Congress expressly excluded consumer actions . . . for violations § 1681s-2(a), such as when a consumer notifies the furnisher directly that the information the furnisher is providing is incorrect. Hence, applying the temporal approach in these circumstances removes any means for the consumer to seek redress." *Barnhill*, 378 F. Supp. 2d at 702. In other words,

9

Congress already foreclosed a private cause of action pursuant to the FCRA in these circumstances, and adopting the temporal review would strip the only remaining cause of action available to consumers—common law tort.

Third, portions of § 1681s-2, which details the reporting acts on which § 1681t(b) preempts state law, include the requirement that furnishers of credit information "report accurate information regardless of whether the furnisher has notice of the dispute." *Gordon v. Greenpoint Credit*, 266 F. Supp. 2d 1007, 1012-13 (S.D. Iowa 2003). *See generally* 15 U.S.C. § 1681s-2(a)(1)(A). Thus, the temporal view has no basis in the text of the FCRA, and the notice-trigger appears to be arbitrary. Again, the Court notes that to date, no federal court in the Fourth Circuit has employed this construction, and the Court declines to do so for the reasons stated above.

>   3. *Third Approach: 15 U.S.C. § 1681t(b)(1)(F) Wholly Preempts State Statutory Law and 15 U.S.C. § 1681h(e) Preempts Select Common Law Causes of Action*

The "statutory approach" concludes that Congress intended § 1681t(b)(1)(F) to fully preempt state statutory causes of action related to information furnishers such as TransUnion and § 1681h(e) to preempt only certain state common law causes of action. *See Barnhill*, 378 F. Supp. 2d at 703; *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1376 (N.D. Ga. 2004). The plain language of §§ 1681t(b)(1)(F) and 1681h(e) supports this construction. Section 1681t(b)(1)(F) specifically excepts from its application two state statutory schemes—one from the Massachusetts Annotated Laws and one from the California Civil Code. 15 U.S.C. § 1681t(b)(1)(F) (excepting Mass. Ann. Laws ch. 93, § 54A(a) and Cal. Civ. Code § 1785.25). Section 1681t(b) makes no mention of common law causes of action, and other portions of § 1681t additionally refer to the statutory laws of other states. *See, e.g.*, *id.* § 1681t(b)(3) (exempting Colo. Rev. Stat §§ 5-3-106(2) and 212-14.3-

104.3 from other preemption provisions). Conversely, section 1618h(e) mentions several common law causes of action—negligence, defamation, and invasion of privacy.

Further, as the *Barnhill* court noted, "there is [uniform] support for this approach among the district courts within the United States Court of Appeals for the Fourth Circuit and in two unpublished opinions by the Fourth Circuit." 378 F. Supp. 2d at 703-04. This remains the case, although the Fourth Circuit Court of Appeals has yet to squarely address the issue. Perhaps most forcefully, this reconciliation of the FCRA's two preemption provisions does not render § 1681h(e) a nullity or overlook any aspect of that subsection's plain language. Proper deference to Congress requires the Court to adopt this interpretation of the FCRA's preemption provisions, and further, the Court finds the reasoning and conclusions of other district courts in this jurisdiction instructive and persuasive.

After applying the "statutory approach," as it is set forth above, the Court concludes that § 1681t(b)(1)(F) does not preempt Plaintiff's negligence claim in this case. This conclusion is unmistakable; section 1681t(b)(1)(F) applies only to statutory causes of action. Accordingly, if CAMC's motion to dismiss is to succeed, section 1681h(e) must preempt the negligence claim against it.

### D.   *Applicability of 15 U.S.C. § 1681h(e)*

In its supporting memoranda, CAMC argues that because Plaintiff fails to sufficiently allege that CAMC acted with malice or willful intent to injure, section 1681h(e) precludes her state law claim entirely. (Docket 7 at 2-3.) This argument fails to engage in the proper inquiry as to the applicability of § 1681h(e). The Fourth Circuit has recently stated, as have other circuits, that the application of § 1681h(e) involves a two step inquiry:

11

> First, we ask whether the claim falls within the scope of § 1681h(e), which includes only claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." [As a general rule, state common law claims based on information disclosed pursuant to those provisions are preempted.] The second step in the analysis involves determining whether the "malice or willful intent to injure" exception to the general bar against state law actions applies. [If the exception applies, the claims are not preempted.]

*Ross*, 625 F.3d at 814 (citing 15 U.S.C. § 1681h(e)). In other words, section 1681h(e) precludes state common law causes of action only to the extent they relate to certain information disclosures—those covered by 15 U.S.C. §§ 1681g, 1681h, or 1681m, or disclosures "by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report"—and then, only to the extent the claims are premised on simple negligence rather than malice or willful intent to injure. Thus, to demonstrate that Plaintiff's negligence claim is preempted by the FCRA, CAMC must prove (1) that Plaintiff's claim is based on information disclosed pursuant to 15 U.S.C. § 1681g, § 1681h, or § 1681m, or otherwise relates to information disclosed "by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report," and (2) that Plaintiff's claim does not sufficiently allege malice or willful intent to injure. *See, e.g.*, *Johnson*, 351 F. Supp. 2d at 1376-77 (identical analysis in defamation case). The *Johnson* court adequately summarized the rationale for the limited scope of § 1681h(e) as follows:

> "It is clear that the qualified immunity provided for by the FCRA is meant by Congress to be the 'quid pro quo for full disclosure.'" *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir. 1980) (quoting *Retail Credit Co. v. Dade County*, 393 F. Supp. 577, 584 (S.D. Fla. 1975)). Since the various parts of the federal statute require consumer reporting agencies and information users to disclose information to consumers under certain circumstances, this section guarantees that the agencies or users cannot be sued for those required disclosures under state tort law. It makes sense that acts required by the FCRA are immunized from state tort liability. *McAnly*

>   *v. Middleton and Reutlinger, P.S.C.*, 77 F. Supp. 2d 810, 814 (W.D. Ky. 1999); *see also* 16 C.F.R. Appx. to Pt. 600—Commentary on the Fair Credit Reporting Act, § 610—Conditions of Disclosure, p.6 ("The privilege extended by [§ 1681h(e)] does not apply to an action brought by a consumer if the action is based on information not disclosed pursuant to sections p1681g, 1681h, or 1681m]").

351 F. Supp. 2d at 1376-77.

In their briefing, both parties argue the second prong of the § 1681h(e) analysis—regarding malice or willfulness—without first addressing whether the disclosure at issue falls within the ambit of § 1681h(e) at all. This error is fatal because, by the plain language of § 1681h(e), the heightened standard of malice or willfulness is only applicable to actions based on disclosures pursuant to 15 U.S.C. §§ 1681g, 1681h, or 1681m, or "by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." 15 U.S.C. § 1681h(e). Sections 1681g and 1681h apply only to CRAs, and the parties do not allege that CAMC is a CRA. *See id.* §§ 1681g (requiring CRAs to disclose file information upon the consumer's request), § 1681h (setting forth conditions of disclosing information pursuant to § 1681g); *Ross*, 625 F.3d at 814 (holding the same). Section 1681m applies only to users of consumer reports, and CAMC is not a user of consumer reports vis-à-vis Plaintiff in this case. *See* 15 U.S.C. § 1681m (imposing duties on users of credit information who take "any adverse action with respect to any consumer that is based in whole or in part on any information contained in the consumer report"). The final category under § 1681h(e) is inapplicable for similar reasons—CAMC neither used Plaintiff's credit report nor took adverse action based on information in her credit report. *See Ross*, 625 F.3d at 814 (similar holding). The facts before the Court indicate that CAMC did not use Plaintiff's credit report at all, much less take any adverse action against her based on information contained in her credit report. Instead, it appears that CAMC furnished allegedly inaccurate

13

information to a CRA. Plaintiff further claims that the inaccurate reporting would not have occurred but for CAMC's negligence in recording payment and reporting the debt. Thus, it is clear that Plaintiff's negligence claim does not fall within the limited scope of § 1681h(e) in the first instance. Her claims do not relate to one of the required disclosures enumerated in § 1681h(e), and therefore, the general bar on state common law causes of action that § 1681h(e) embodies is inapposite. There is no need to engage in the "malice or willful intent" inquiry suggested by the parties.

### IV. CONCLUSION

Neither of the FCRA's preemption provisions preclude Plaintiff's common law negligence claim. Accordingly, Defendant CAMC's motion to dismiss Count Three of the amended complaint [Docket 26] is **DENIED**. Defendant's motion to dismiss Count Three of the original complaint [Docket 6] is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 14, 2011

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE